IN THE

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF COLUMBIA


CHARLES E. FORRESTER, JR.,

     Plaintiff,


v.                              Civil No. **06-1954(HHK)**


BUREAU OF PRISONS, <u>et al.</u>,

     Defendants.


**PLAINTIFF'S MOTION SEEKING LEAVE TO FILE
A SUR-REPLY TO THE DEFENDANTS' REPLY TO
PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
SUPPLEMENTAL MOTION TO DISMISS AND
PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE**


    **Comes now** the Plaintiff, Charles E. Forrester, Jr., moving **pro se**, and hereby respectfully requests the Court to grant this instant motion seeking leave to file a sur-reply to the Defendants' reply to Plaintiff's response in opposition to the Defendants' supplemental motion to dismiss and Plaintiff's request for Judicial Notice. In support of this motion, Plaintiff states the following:


    Granting this motion will give Plaintiff the opportunity to rebut for the first time the Defendants' reply, which raises the new argument that "Plaintiff fails to demonstrate a **constitutional**

# RECEIVED

DEC 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

- 1 -

violation" [emphasis added]. The Defendants are attempting to re-
litigate the constitutionality of Plaintiff's remaining claim, which
is in stark contrast with this Court's order of September 12, 2007,
which directed the Defendants to "...address[] whether plaintiff is
being deprived of any educational or vocational training programs
at RCI in violation of 28 C.F.R. § 541.12(10)", specifically because
"the Court may not conclude on this record that plaintiff cannot
establish any set of facts consistent with the allegations in the
complaint regarding this **statutory violation**" [internal quotation
marks omitted]. See the Court's Order and its Memorandum Opinion
at page 7. The Court "direct[ed] defendants to supplement the re-
cord by addressing [that] claim", not to re-hash any constitutional
issue.

In addition, Plaintiff will have the opportunity to respond
to the Defendants' extremely vague representation to this Court per-
taining to Plaintiff's request for Judicial Notice. Plaintiff as-
serts that the Defendants' arguments are being presented to this
Court for the first time. Courts routinely grant motions for leave
to file a sur-reply when a party such as the Plaintiff is "'unable
to contest matters presented to the Court for the first time'."
Ben-Kotel v. Howard University, 319 F.3d 532, 536 (D.C.Cir. 2003)
(quoting Lewis v. Rumsfeld, 154 F.Supp.2d 56, 61 (D.D.C. 2001));
United States v. Baroid Corp., 346 F.Supp.2d 138, 143 (D.D.C. 2004);
Robinson v. The Detroit News, Inc., 211 F.Supp.2d 101, 112 (D.D.C.

- 2 -

2002) ("[t]he standard for granting leave to file a sur-reply is whether the party making the motion would be unable to contest matters presented to the Court for the first time in the opposing party's reply"). <u>Flynn v. Veazey Const. Corp.</u>, 310 F.Supp.2d 186, 189 (D.D.C. 2004).

Unequivocally, the argument raised by the Defendants in their December 11, 2007 reply <u>were</u> <u>not</u> incorporated into their November 5, 2007 Supplemental Motion to Dismiss. Plaintiff asserts that the Court should grant this motion authorizing the accompanying sur-reply. <u>See</u> the attachment. <u>McNamara v. National Credit Union Ass'n</u>, 264 F.Supp.2d 1,4 (D.D.C. 2002) (courts are to grant pro se litigants more latitude in procedural matters); <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972).

Respectfully submitted,

Date: December 18, 2007        /s/

Charles E. Forrester, Jr.
Fed. Reg. No. 09565-007
Rivers Correctional Institution
P.O.Box 630
Winton  NC  27986-0630

- 3 -

IN THE

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF COLUMBIA


CHARLES E. FORRESTER, JR.,
     Plaintiff,

v.                                 Civil No. <u>06-1954(HHK)</u>

BUREAU OF PRISONS, <u>et al.</u>,
     Defendants.


**PLAINTIFF'S SUR-REPLY TO THE DEFENDANTS'
REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DISMISS
AND PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE**


In their reply brief, the Defendants argued for the first time that "Plaintiff fails to demonstrate a constitutional violation." <u>See</u> p. <u>1</u> of the Defendants' December 11, 2007 reply. <u>Flynn v. Vea-zey Const. Corp.</u>, 310 F.Supp.2d 186, 189 (D.D.C. 2004) ("If the movant raises arguments for the first time in his reply to the non-movant's opposition, the court will either ignore those arguments in resolving the motion or provide the non-movant an opportunity to respond to those arguments by granting  leave  to file a sur-reply").

- 1 -

Summary judgment would not be appropriate in this case, <u>Morris v. Buvermo Properties, Inc.</u>, 510 F.Supp.2d 112, 116 (D.D.C. 2007), based on the fact that the Defendants have utterly failed to comply with this Court's September 12, 2007 order, which directed the Defendants to "...address[] whether plaintiff is being deprived of any educational or vocational training programs at RCI in violation of 28 C.F.R. § 541.12(10)", specifically because "the Court may not conclude on this record that plaintiff cannot establish any set of facts consistent with the allegations in the complaint regarding this <u>statutory violation</u>" [internal quotation marks omitted]. <u>See</u> the Court's order and its Memorandum Opinion at p. <u>7</u>.

Importantly, the Defendants, in their November 5, 2007 Supplemental Memorandum, they acknowledge the Court's extremely specific directive. <u>See</u> <u>id</u>. at footnote <u>1</u>. However, the Defendants chose to ignore the Court's order and elected to submit a reply to this Court challenging the constitutionality of Plaintiff's remaining claim that he currently is being deprived of his "right to participate in...vocational training", in violation of 28 C.F.R. § 541.12 (10) (Inmate rights and responsibilities). "'...it is elementary that an agency must adhere to its own rules and regulations'." <u>AT & T Corp. v. F.C.C.</u>, 448 F.3d 426, 434 (D.C. Cir. 2006) (quoting <u>Reuters Ltd. v. F.C.C.</u>, 781 F.2d 946, 950 (D.C. Cir. 1986)).

The Court "direct[ed] defendants to supplement the record by addressing [the statutory] claim", not to re-hash any constitutional

issue. This Court has allotted the Defendants at least two (2) opportunities to address Plaintiff's assertion that currently, the Defendants are depriving him of vocational training programs at RCI in violation of 28 C.F.R. § 541.12(10). See the Defendants' November 5, 2007 Supplemental Motion To Dismiss, and their December 11, 2007 Reply To Plaintiff's opposition.

The Defendants have circumvented the Court's order by advancing an argument to the Court that "Plaintiff fails to demonstrate a Constitutional violation". Thus, Plaintiff asserts that the Defendants current deprivation of his right to particiate in viable vocational training programs at RCI as prescribed in 28 C.F.R. § 541.12 (10), contravenes the principle commonly known as the Accardi doctrine, which was announced by the Supreme Court in United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 265-67 (1954): that regulations validly prescribed by a government administrator are binding upon him as well as the citizen, and that this principle holds even when the administrative action under review is discretionary in nature. See chiefly, Guam Industrial Services, Inc. v. Rumsfeld, 441 F.Supp.2d 21, 26 (D.D.C. 2006); Battle v. F.A.A., 393 F.3d 1330, 1336 (D.C. Cir. 2005); Steenholdt v. F.A.A., 314 F.3d 633, 639 (D.C. Cir. 2003); Wilkinson v. Legal Services Corp., 27 F.Supp.2d 32 (D.D.C. 1998).

The Defendants cite to Women Prisoners of District of Columbia Dept. of Corrections v. District of Columbia, 93 F.3d 910 (D.C.Cir.

- 3 -

1996), which is distinguishable from the instant case.  First, in
Women Prisoners, the female inmates were housed within the District
of Columbia-operated facilities, which were governed by the rules
of the District of Columbia.  In addition, that case was decided
prior to the 1997 Congressional mandate set forth in D.C. Code §
24-101(b) (2001).  Notably, and second, in Women Prisoners, the
BOP regulation 28 C.F.R. § 541.12(10) **was** **not** an issue at all,
nor was § 541.12(10) applicable to the D.C. Code inmates housed
at the Lorton complex.  Thus, there is a stark distinction between
the instant case and Women Prisoners.

In paragraph 3 of the Defendants' reply, they state that "...
prisons do not have the resources, or as this Court has noted,
the constitutional responsibility to provide an unlimited menu
of training options to inmates".  See id.  In the Court's September
12, 2007 Memorandum, the Court clearly stated that "[i]n the ab-
sence of any contradicting evidence, particularly with regard to
program resources, the Court may not conclude on this record that
plaintiff cannot establish 'any set of facts consistent with the
allegations in the complaint'..."  See id.  "Prisons do not have
the resources" (what prisons?!?) does not even begin to constitute
evidence of any sort.  And the constant reiteration of "constitu-
tional" violations has nothing to do with this Court's Order to
supplement the record.  The Defendants have failed to provide this
Court with any **evidence** whatsoever that will establish that the

- 4 -

BOP does not have the **program resources** to implement viable mar-
ketable vocational training programs at RCI.  In fact, in its state-
ment to Congress, the BOP's director implied that the BOP would
be fixing the problem of insufficient programming at RCI - and
how could that be accomplished without any resources?  (Unless
the statement to Congress was false.)  And there is a statutory
mandate that requires the BOP to provide underline training programs  to the
inmates at RCI.  See chiefly D.C. Code § 24-101(b) and Plaintiff's
November 13, 2007 Opposition at pp. **7-12**.  The BOP's inactions are
"'...not in accordance with law'."  Sara Lee v. American Bakers Ass'n
Retirement Plan, 512 F.Supp.2d 32, 37 (D.D.C. 2007) (citing to 5
U.S.C. § 706(2)(A)).


**Judicial Notice**

     Within paragraph **4** of the  Defendants' reply, they claim that
the statements made to Congress by the BOP's director and the other
public officials are "not admissions of a constitutional violation".
Dubious—not because the admissions <u>do</u> or <u>don't</u>, but rather, because
**constitutional violations are no longer the issue**.  It is unclear
how to more plainly state that concept; and obviously, the Defendants
are sticking to the tardy "constitutional" defense because they are
unable to address the statutory violation at all.  Nevertheless,
for the sake of clarity, Plaintiff reiterates and clarifies that
the statement "we now believe that the vocational training and resi-
dential drug abuse treatment programs are inadequate" is a statement

rendered in plain English, which actually means

> **we now believe that the vocational training and residential drug abuse treatment programs are inadequate.**

There does not appear to be any claim of a constitutional violation made here, either on Plaintiff's part nor in the text of Mr. Lappin's statement. ("It means what it says," as do the statutes.)  He then said, "We have identified a need to expand vocational training programs", which means that they (the Defendants, who are the BOP, of whom Mr. Lappin is still the Director) have identified a need to expand vocational training programs (again, plain English which means what it says, and excludes any reference to constitutional violations). What the statement of Harley Lappin does establish is that he is in agreement with Plaintiff (not to mention Congresswoman Eleanor Holmes Norton being informed by Rivers officials that "there are no higher education programs" available) that "the vocational training" at RCI is "inadequate"—and that the BOP is currently violating the Congressional mandate (which is not the Constitution) set forth at D.C.Code § 24-101(b), by failing to provide Plaintiff with viable marketable vocational program opportunities.  So, the statement of Mr. Lappin completely substantiates Plaintiff's assertion that the Defendants are currently depriving Plaintiff of vocational training at RCI in violation of 28 C.F.R. § 541.12(10)—hence, the "need" that Defendants have "identified" (though it is not made clear whether this need was identified in September 2006, when Plaintiff notified Mr. Lappin via certified mail of the inadequate vocational training at RCI; see

- 6 -

Plaintiff's original complaint, at Exhibit Six (Letter to Harley
Lappin)). <u>See chiefly</u>, <u>United States ex rel. Accardi v. Shaughnessy</u>,
347 U.S. 260, 265-67 (1954); <u>AT & T Corp. v. F.C.C.</u>, 448 F.3d 426,
434 (D.C.Cir. 2006) ("'...it is elementary that an agency must adhere
to its own ruled and regulations'") (quoting <u>Reuters Ltd. v. F.C.C.</u>,
781 F.2d 946, 950 (D.C. Cir. 1986)).


    There is additional public information that would corroborate
Plaintiff's assertion that the Defendants do not have any viable pro-
gram opportunities available to Plaintiff at RCI.

> "A Rivers official told the Congresswoman [Eleanor
> Holmes Norton] and her staff that the level of edu-
> cation for many D.C. inmates at Rivers is high and
> often above high school level, **but there are no
> higher education programs for these individuals.**"

<u>See</u> Exhibit one. <u>See also</u> Plaintiff's November 13, 2007 opposition at
pp. <u>4</u>-<u>6</u>. Plaintiff presented the October 16, 2007 Congressional
testimony, and statements to this Court pursuant to 28 U.S.C. § 201
(2001). The information provided to the Court is extremely relevant
to Plaintiff's remaining claim. <u>See</u> 28 C.F.R. § 201(b). <u>See also</u>,
<u>Covad Comms. Co. v. Bell Atlantic Corp.</u>, 407 F.3d 1220, 1222 (D.C.
Cir. 2005) (permitting judicial notice of facts in public records
of other proceedings); <u>U.S. ex rel Dingle v. Bioport</u>, 270 F.Supp.2d
968, 972 (W.D.Mich. 2003) (same); <u>Adarand Constructions Inc. v. Sla-
ter</u>, 228 F.3d 1147, 1168-69, n. 12 (10th Cir. 2000) (same).

To reiterate, the Defendants have failed to address Plaintiff's remaining claim as directed by this Court. Plaintiff asserts that he has a genuine statutory violation issue that is ripe for trial. Importantly, because the Defendants **have** **not** addressed Plaintiff's remaining claim as ordered by this Court, the Defendants are **not** entitled to summary judgment as a matter of law. See chiefly, <u>Morris v. Buvermo Properties, Inc.</u>, 510 F.Supp.2d 112, 116 (D.D.C. 2007) (quoting the standard for summary judgment).

<u>CONCLUSION</u>

Accordingly, Plaintiff has stated a claim upon which relief can be granted; thus, the Court is hereby respectfully requested to deny the Defendants' request to dismiss Plaintiff's civil action.

Respectfully submitted,

December 18, 2007          /s/

Charles E. Forrester, Jr.
Fed. Reg. No. 09565-007
Rivers Correctional Institution
P.O.Box 630 / Unit C4
Winton  NC  27986-0630

- 8 -

## CERTIFICATE OF SERVICE

This is to certify that I have this **18th** day of December 2007 served a copy of the foregoing upon the below-listed party by placing the same in the Rivers Correctional Institution prison mailbox, addressed as follows:

Blanche L. Bruce
Assistant United States Attorney
555 Fourth Street  NW
Room E-4220
Washington  DC  20530

/s/

Charles E. Forrester, Jr.
pro se

- 9 -



<u>**For Immediate Release**</u>
**August 14, 2007**

Contact: Julia Hudson
(202) 225-8050
Julia.Hudson@mail.house.gov
Web Site: http://www.norton.house.gov

### Norton's Eye Opening Visit To Rivers Correctional Institution Underscores Need for Inmate Substance Abuse Treatment and Many Other Services
### Hearings in September

Washington, DC-- Congresswoman Eleanor Holmes Norton (D-DC), in the first visit by a D.C. elected official to Rivers Correctional Institution, assured D.C. inmates that with the change in the control of Congress, oversight has begun and that she is working to make sure that Rivers inmates have access to the same programs as others at Bureau of Prisons (BOP) facilities around the country. With clear signs of increase in crime in D.C., Norton told Warden George E. Snyder and Rivers and BOP personnel that her first priority is increasing substance abuse treatment. A limited, non-certified program is available only to 60 of the 1,355 inmates, although 50 to 80 percent have substance abuse problems. "The reported 65% recidivism rate can be traced back largely to putting men on the streets with no money, no plan for the future, and an unresolved drug habit," Norton said. Inmates in many BOP facilities get early release incentives upon completion of a 500 hour drug treatment program, which is unavailable at Rivers. Thus, D.C. prisoners have less encouragement to enroll in the program (although the Rivers program has a waiting list), and get far less effective drug treatment, if any, before coming back to D.C. "I told the inmates that providing substance abuse treatment that works is my first priority," she said, "to assure that they break the habit that got most of them there and to relieve the burden none of them wants to put on their family, friends and the city."

Norton toured the health and dental care units, GED and life skills classes, the cafeteria, kitchen, commissary, and programs that included woodworking with a focus on cabinet making and computer classes. She had access to all parts of the facility and spoke with individuals and groups of inmates at will in the yard, in their living quarters, and in the halls of the institution. Many felt free to stop Norton and have discussions or air complaints that ranged from the size of the gratuity once released to the need for the same programs at Rivers as at other BOP facilities.

A Rivers official told the Congresswoman and her staff that the level of education for many D.C. inmates at Rivers is high and often above high school level, but there are no higher education programs for these individuals. Norton will seek discussions with the University of the District of Columbia concerning providing college correspondence courses. The D.C. Office of the State Superintendent of Education also provides a federally financed program for inmates aged 19 to 26 to receive Heating, Ventilation, and Air Conditioning (HVAC) training through the local community college, Roanoke-Chowan Community College.

**(More)**

**EXHIBIT ONE**

The Norton visit begins a much longer investigation and oversight of D.C. inmates and facilities. Because law enforcement agencies, including prisons and courts, are now 100% federally funded, D.C. no longer has jurisdiction to do the requisite oversight to make improvements. "The buck literally has been passed to the federal government, and with it, the responsibility. It is time Congress assumed the oversight responsibility that goes with the funding." However, Norton is concerned to get more formal D.C. involvement, especially in seeking untapped available federal funding, and with reentry.

Norton has said that D.C. inmates are treated as second class citizens by BOP, but she says the major blame belongs with Congress, which has provided no oversight since the transfer in 1997 and inadequate funding. Norton told the inmates she visited with yesterday, "I am here to do my part to get the necessary funds so that inmates from the District of Columbia receive the same services prisoners across the country receive from the Bureau of Prisons." However, she also told the inmates that the city wants them to do their part to stay clean and out of jail.

The Congresswoman will hold a series of hearings focused on Rivers. The first will be a teleconference between the Black Men and Boys Commission and Rivers inmates, and an official hearing to be held September 18th will focus on transition services and community supervision. Norton will continue to pursue equal treatment of District inmates as she looks into how the 7,000 D.C. residents scattered across the country are housed and how to bring them closer to home. She also will visit BOP prisons in the coming month. She is concerned that lack of family contacts and difficulty accessing services in the community, coupled with lack of substance abuse treatment, exacerbates the difficulties the District and the inmates have in effectively integrating these residents back into the community.

Rivers, originally built as a 1,200 bed facility, currently houses 1,355 inmates and has an expanded inmate capacity of 1,380 inmates as of August 13, 2007. District of Columbia residents make up approximately 65% of the total inmate population, with the other 35% comprised of criminal immigrants from various areas. No other citizen inmates are housed in private facilities. The average incarceration time in this low security facility is less than two years. The average age of the inmates is 40 years old, necessitating more health care than normal. A healthcare lawsuit is being brought by the Washington Lawyer's Committee for Civil Rights and Urban Affairs' D.C. Prisoners' Project.

###